UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADN JEANS GROUP LLC, | Civil Action No.: 23-cv-02862(ALC) |
| *Plaintiff,* | |
| v. | **DECLARATION OF SEBASTIAN KONTAROVSKY** |
| MUNDI TRADE, INC. | |
| *Defendant.* | |

I, Sebastian Kontarovsky, hereby declare under penalty of perjury that the following facts are true and correct:

1. I am Chief Operating Officer for Mundi Trade, Inc. ("Mundi" or "Defendant"), a Defendant in the above-captioned matter. I am personally aware of all facts set forth herein.

2. I submit this Declaration in support of Defendant's Motion to Dismiss the Complaint filed by Plaintiff, ADN Jeans Group LLC ("Plaintiff") for Failure to State a Claim pursuant to F.R.C.P. 12(b)(6).

3. On or about June 1, 2021, Mundi and ADN entered into a factoring agreement for the sale of ADN's accounts receivable. This agreement covered certain ADN accounts including the obligations owed by ADN's customer account debtor Ariat International, Inc. to ADN as stated in Plaintiff's Complaint. A true and correct copy of the factoring agreement is attached hereto as Exhibit A.

I declare that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

By: *Sebastian Kontarovsky*
    Sebastian Kontarovsky

Dated: August 17, 2023

# **EXHIBIT A**

Doc ID: 56ea11b0ac782d2100303a73cb1c2d2b2c3494fa



# AGREEMENT FOR THE SALE AND PURCHASE OF ACCOUNTS RECEIVABLE

This Agreement for the Sale and Purchase of Accounts Receivable (as amended, restated, supplemented or otherwise modified and in effect from time to time, the "**Agreement**") is made this 1 day of June, 2021, by and between ADN JEANS GROUP LLC (the "**Assignor**") and Mundi Trade, Inc. Mundi Trade, Inc. (the "**Assignee**").

WHEREAS, Assignor, desires to receive certain financial accommodations from Assignee and certain of Assignee's affiliates for business purposes for the mutual benefit of both parties;

WHEREAS, each Assignor and Assignee will obtain substantial benefit from the transactions described herein;

WHEREAS, Assignor sells goods and services to certain clients of Assignor, including, without limitation, those clients listed on **Exhibit "A"** attached hereto (as may be amended from time to time, the "**Clients**");

WHEREAS, upon the delivery of such goods and services to Clients, Assignor issues invoices for such goods and services sold to the Clients;

WHEREAS, the amounts owed from time to time by the Clients to Assignor with respect to such invoices and all other amounts now or hereafter owed by Clients to the Assignor are collectively referred to as the "**Accounts Receivable**" which shall include, "accounts" as defined in the Uniform Commercial Code for the State of New York ("**UCC**");

WHEREAS, the Accounts Receivable, including all Related Rights thereto (as defined herein) as set forth on **Exhibit "B"** (as may be amended, restated or otherwise modified) are collectively referred to herein as the "**Assigned Assets**"; and

WHEREAS, for the purpose of assisting Assignor in the collection of the Assigned Assets, Assignor desires to irrevocably assign to Assignee, and the Assignee desires to accept the assignment of, all of Assignor's rights, titles and interest in, to and under the Assigned Assets under the terms and conditions of this Agreement; and

WHEREAS, in consideration for this Agreement, Assignee shall pay a purchase price to the Assignor for the Assigned Assets in accordance with terms and conditions of the documents signed by the parties on the date hereof.

NOW THEREFORE, the parties agree as follows:

1. <u>Recitals</u>. The foregoing recitals are true and correct and are incorporated herein by reference.

2. <u>Assignment of the Accounts Receivable</u>. Assignee shall have the option to purchase from Assignor, and Assignor shall sell, assign, transfer, and convey to Assignee by means of this non-recourse factoring, all of Assignor all of Assignor's right, title, interest and ownership in, to and under the Assigned Assets arising from or related to the sale of goods, the furnishing of materials or the rendering of services by Assignor in Assignor's ordinary course of business and created as a result of the sale of goods and/or the rendering of services between Assignor and its Clients. Subject to the terms of this Agreement, the Assigned Assets shall be deemed acceptable for purchase and/or assignment in Assignee's sole and absolute and unlimited discretion.

Doc ID: 56fe04b024982726062063a73cbe8272b2c334945a



The assignment of the Accounts Receivable include, without limitation, the transfer to Assignee of the sole and exclusive right to:

**(a)** Demand collection and receive payment of the obligations contained in the Accounts Receivable;

**(b)** Issue payment instructions with respect to the payment of the obligations contained in the Accounts Receivable;

**(c)** Enforce any security interest or other rights the Assignor may have in connection with the Assigned Assets; and

**(d)** Enforce all other rights and remedies of Assignor under the Assigned Assets (including, without limitation, all rights and remedies of a secured creditor under any applicable law to any security interest arising under or in connection with the Assigned Assets). The Assignee shall not be deemed by anything contained herein, or in any other agreement among the Assignee and the Assignor, to have assumed any liabilities whatsoever relating to, or arising out of, directly or indirectly, any Assigned Asset.

For purposes of this Agreement, "**Related Rights**" shall mean, with respect to each Account Receivable:

**(a)** All rights, but not any obligations, under all related invoices, purchase orders or other agreements between Assignor and Client with respect to such Account Receivable;

**(b)** All documents, instruments and chattel paper arising pursuant to or otherwise evidencing such Account Receivable;

**(c)** All returned, repossessed or reclaimed inventory or goods, if any, the sale of which gave rise to any such Account Receivable, and all rights to reclaim, repossess, and demand return of such inventory or goods;

**(d)** All related invoices, purchase orders, support documents or other agreements between Assignor and Client evidencing such Account Receivable and such other documents of Assignor determined by Assignee, in its discretion, to be necessary or appropriate for the efficient and actual collection of Accounts Receivable that have not been paid by the due date thereof, including as appropriate, credit memos, ledger cards, bills of lading and other shipping evidence, statements, correspondence, and other data relating to any such Account Receivable or any Client;

**(e)** All rights with respect to all commercial tort claims, insurance proceeds or any other claims arising with respect to any such Account Receivable, including without limitation the goods or services rendered in connection therewith;

**(f)** All funds which are received by Assignor or Assignee in payment of any amounts owed in connection with any such Account Receivable; and

**(g)** All proceeds of the foregoing, in any form, including insurance proceeds and all claims against third parties for loss or damage to or destruction of or other involuntary conversion of any kind or nature of any or all of the foregoing.

Doc ID: [illegible]



All Accounts Receivable purchased by Assignee for which Assignor has received written credit approval for assumed risk shall be deemed sold on a Non-Recourse basis for a Credit Issue. **"Non Recourse"** means that Assignee shall bear the risk of the non-payment of the Account Receivable due solely and exclusively for a Credit Issue. **"Credit Issue"** means an Account Debtor's inability to pay its debts due to insolvency, the dissolution, termination of existence or business failure of the Account Debtor or the commencement of any bankruptcy or insolvency proceeding related thereto.

It is the expressed intention of the parties that the transactions contemplated by this Agreement with respect to the Accounts Receivable involve a true sale and purchase of Accounts Receivable with transfer of title thereto, and shall not be deemed to be a loan or financing arrangement. Notwithstanding this express intention, should a court of competent jurisdiction determine that the transactions contemplated herein shall be construed to be a loan by Assignee to Assignor and that all deductions, rebate charges, Assignee's costs and any other charges hereunder are to be treated as interest on funds advanced, then Assignor shall be deemed to have agreed to pay that rate of interest as is determined resulting from all charges paid or to be paid by Assignee arising out of this Agreement.

**3.    Advances.** Subject to the terms of this Agreement, the purchase price for each Account Receivable shall be an amount equal to Initial Advance plus the Balance Payment and any Other Charges due to Assignee under this Agreement, minus the Factoring Commission (as defined under the **Exhibit "C"** hereto and the Other Charges, defined herein adjusted for withholding tax (if applicable).

Subject to the terms of this Agreement, Assignee will remit the price for the purchase and assignment of the Accounts Receivable as follows:

**(a)** On Assignee's acceptance and receipt of an approved Account Receivable, the Initial Advance, equal to the percentage set forth on **Exhibit "C"** hereto as the Initial Advance of the Net Amount;

**(b)** On Assignee's receipt of cleared funds equal to the full amount owing on the purchased Account Receivable, the Balance Payment, equal to the percentage set forth on **Exhibit "C"** hereto as the Balance Payment, minus any other amounts due Assignee under this Agreement ("**Other Charges**") minus the applicable Factoring Commission.

Assignor agrees to pay Assignee the Factoring Commission, Other Charges and all other amounts, costs, fees, indebtedness or obligations owed under this Agreement arising out of or related to Assignee providing services to Assignor hereunder in accordance with the terms and conditions of this Agreement.

Each payment made by Assignee in connection with the purchase of any Account Receivable shall be subject to a reserve that Assignee, in its sole discretion, may elect to maintain as security for outstanding obligations owed by Assignor (hereinafter referred to as "**Reserve**"). Amounts received by Assignee with respect to Accounts Receivable that have been subsequently repurchased by a Assignor shall be credited to the Reserve. Subject to the terms of this Agreement, the Reserves may be released upon the request of a Assignor or when Assignee's subsequent purchase of Accounts Receivable from such Assignor is funded, in each case to the deposit account where Assignor has designated advance payments by Assignee will be funded. Assignee may increase or decrease the amount of a Reserve at any time and from time to time as it deems necessary in order to protect its interests hereunder, including, but not limited to, contingencies, disputes, and breaches of representations and warranties.

Doc ID: 56fe04b024782726062063a73cbe8272b2c33945a



**4.** <u>Representations and Warranties of Assignor</u>. Assignor represents and warrants to Assignee, which such representations and warranties shall be deemed to be made at the time each Account Receivable is purchased by and assigned to Assignee that:

**(a)** The total amount due of each Account Receivable due under the Assigned Assets is as set forth in each applicable invoice issued by Assignor therefore payable on the terms set forth in each applicable invoice thereon;

**(b)** Assignor is the sole and exclusive owner of, and has valid title to, each Account Receivable, free and clear of all liens, claims and encumbrances; and each Account Receivable has not been sold, transferred, assigned, to or encumbered by any other third party;

**(c)** All obligations represented by the Account Receivable result from the provision by Assignor of goods or services in the ordinary course of Assignor's business; and the Accounts Receivable arose from a commercial transaction and not for personal, family, or household purposes;

**(d)** There are no disputes, claims or lawsuits pending or threatened against Assignor (including claims of set-off) relating to the goods or services giving rise to any Accounts Receivable, nor, to Assignor's knowledge is there any basis for any such claim;

**(e)** There exist no disputes with regard to the validity or collectability of the Account Receivable, nor is there any basis for any such dispute;

**(f)** Assignor is not in breach of any provision of the Assigned Assets;

**(g)** Assignor is duly organize, validly existing and in good standing under the laws of the jurisdiction of its organization and has all requisite power and authority to execute, deliver, and perform under this Agreement;

**(h)** The execution, delivery and performance under this Agreement by Assignor and the consummation of the transactions contemplated hereby will not result in breach of, or conflict with the organizing documents of Assignor, any judgment decree, order, or award of any court, governmental body, or violate any federal, state, municipal, local or foreign laws, statues, rules or regulations applicable to Assignor;

**(i)** Assignor is presently doing business under the name set forth in this Agreement at the address identified hereunder and all documents and records pertaining to the Accounts Receivable shall be stored at the location identified herein.

**5.** <u>Notice of Assignment</u> Within the 3 (three) days following the execution of this Agreement, Assignor shall serve written notice of this Agreement to each current and future Client (the **"Notice of Assignment of Receivables"**), in accordance with the model of assignment notice set forth in **Exhibit "D"**, that shall be subject to the following criteria that:

**(a)** Assignor has transferred the Accounts Receivable, and consequently all of its rights, including the Related Rights, to Assignee;

**(b)** (i) Client shall remit payment for each Account Receivable solely and exclusively to Assignee; (ii) Assignee shall be the only party authorized to receive such payments from the relevant Client and (iii) that Assignor agrees that all collection and any payment, check, invoice, incorrect payment,

Doc ID: 56fea04b024982726b6208a73dcb8272b2c34945a

muɔi

excess payment and other income derived from the Accounts Receivable shall be delivered to Assignee or in accordance with Assignee's express written direction;

**(c)** Unless otherwise instructed in writing signed by Assignee, Assignor would be acting solely as agent for the benefit of Assignor in respect of the servicing and collection of such Accounts Receivable; and that Assignee shall hold any payments or funds received in trust for the benefit of Assignee; and

**(d)** All payments by the Client with respect to the Accounts Receivable shall have to be made to the bank account or lockbox of Assignee as instructed in the Notice of Assignment of Receivables.

**6.** Notice of Change of Bank Account. Within the 3 (three) days following the execution of this Agreement, Assignor shall serve irrevocable written notice to each current and future Client (the **"Notice of Assignment of Change of Bank Account"**), in accordance with the model of assignment notice set forth in **Exhibit "D"**, that shall contain the instruction that all payments by the Client with respect to the Accounts Receivable shall have to be made to the bank account of Assignee as instructed in the Notice of Change of Bank Account.

Assignor shall ensure that the bank account that will be notified to the Clients in the Notice of Change of Bank Account, shall have to be controlled, directly or indirectly by Assignee.

**7.** Further Assurances. The Assignor agrees to cooperate with Assignee to maximize the recovery of the Assigned Assets, including but not limited to complying with any reasonable request by Assignee for information or supporting documentation. Assignor shall cooperate

**8.** Grant of Security Interest. Assignor agrees: **(a)** to treat the assignment and transfer to the Assignee of the Assigned Assets as a complete sale, transfer and assignment for all purposes and not a collateral assignment; **(b)** not to treat any Assigned Asset as an asset on the Assignor's books and records; **(c)** not to assign, grant or permit to exist any security interest, encumbrance or any other lien in any Assigned Asset; **(d)** to obtain all consents from Clients and third parties that are required by law in order for the Assignee or its designee, in any manner to obtain payment of the Accounts Receivable; and **(e)** not to claim any ownership interest in any Assigned Asset.

In the event that, contrary to the mutual intent of the Assignor and the Assignee, the transfer and assignment of any Assigned Asset hereunder is not characterized as a true and complete assignment, transfer or sale, then to ensure the prompt payment and performance of Assignor's obligations owed to Assignee hereunder, Assignor hereby grants to the Assignee, effective as of the date hereof, a first priority security interest and lien in and to all assets and property of Assignor, now or hereafter arising, including, but not limited to, all Accounts, Chattel Paper (whether tangible or Electronic Chattel Paper), contracts and contract rights (including, without limitation, all Assignor's rights in invoices, purchase orders in the assets sold and assigned), Deposit Accounts, Documents (including, without limitation, all Assignor 's bills of lading, proof of delivery and supporting documents), Equipment, Fixtures, Instruments (including without limitation, promissory notes), Inventory, Investment Property, Letter of Credit rights, Letters of Credit, all General Intangibles (including without limitation, Payment Intangibles, intellectual property rights and software), Goods, all Reserves in which Assignor has any interest or which are to become due and payable to Assignor, and all books and records of Assignor (whether tangible or electronic) relating to the assets set forth herein, whenever acquired and whether now or hereafter existing, wherever located to the extent not otherwise included, all proceeds, Supporting Obligations and products of

5



any and all of the foregoing and all collateral security and guarantees given by any person with respect to any of the foregoing (all of which are hereinafter collectively called **"Collateral"**).

Notwithstanding anything to contrary herein and subject to the terms of this Agreement, the Assignor is and remains jointly, unconditionally and unlimitedly liable with the Clients for the timely and appropriate payment of the Accounts Receivable to Assignee; therefore, in the event that Clients fail or refuse to pay Accounts Receivable on their due date, Assignor remains committed to pay such Accounts Receivable to the Assignee on such date. Failure to pay the Accounts Receivable will incur and accrue a Default Fee at the rate of Three Percent (3%) of the outstanding balance for the first thirty (30) days or increment thereof that an Account Receivable purchased hereunder remains unpaid and, after such 30 day period, an additional Three Percent (3%) for each 15-day period or increment thereof that an Account Receivable purchased hereunder remains unpaid (**"Default Fee"**).

All of the foregoing Collateral shall secure the payment of all obligations at any time owing to Assignee, fixed or contingent whether arising under this Agreement, by operation of law or otherwise. Assignee is expressly authorized at any time to charge to Assignor, including but not limited to against any credit balance on Assignee's books or any affiliate of Assignee in Assignor's favor, whether matured or unmatured, the amount of any or all of the Obligations. Assignee agrees that, with respect to the security interest granted by this Agreement, Assignee shall have all of the rights and remedies of a secured party as provided by the UCC in addition to any and all remedies provided by any other applicable law and all rights and remedies provided for by this Agreement and by any other agreement; it being understood and agreed that that the security interest in the Collateral granted hereby secures any and all present and future obligations of Assignor to Assignee.

**9.** Power of Attorney/Agency. Assignor hereby designates Assignee as its agent, attorney-in-fact and legal representative, with substitution authorities, coupled with an interest, and in this act irrevocably authorizes Assignee to:

(a) perform the collection of the Accounts Receivable;

(b) designate his own bank accounts to receive Accounts Receivable payments;

(c) implement any measures in connection with the Accounts Receivable; and,

(d) negotiate, execute and sign the documents, checks, or instruments that Assignee deems necessary, appropriate and/or convenient in relation to any of the Accounts Receivable or the transactions contemplated hereunder.

(e) Assignee shall have the right to, without limitation, require and collect payments, file claims, file lawsuits all in the name of Assignor and/or Assignee, and in general shall enjoy all the rights and benefits that correspond to it as owner and holder of the Accounts Receivable;

Formalities. In the event that Assignee so requires, Assignor shall grant an irrevocable power of attorney in favor of Assignee for the purposes of Sections 4, and 8 and 9 of this Agreement, such power of attorney must comply with all the formalities required for its validity for the applicable jurisdiction. If applicable, Assignor shall deliver to Assignee (and/or to any further assignee, beneficiary and/or acquirer of the Accounts Receivable) a notarized copy of the power of attorney, as well as the number of additional notarized copies reasonably required by Assignee (and/or any further assignee, beneficiary and/or acquirer of the Accounts Receivable).

mundi

**10.   Covenants of Assignor.**

Accounts Receivable and Documentation. On the date of each transfer of Accounts Receivable, Assignor shall deliver to the Assignee **(i)** true and correct copies of the underlying contract corresponding to the Accounts Receivable (including any and all invoices, supporting documents and other documents evidencing the Accounts Receivable), together with copies of the original shipping or delivery receipts, and **(ii)** such other documentation as Assignee may require with respect to the Accounts Receivable or in connection with this Agreement, in form and substance satisfactory to Assignee.

Assignor shall sell Accounts Receivable to Assignee without markup over the actual sales price and on terms offered to the Clients. The proceeds of the sale of Accounts Receivable received by Assignor will be used exclusively for business and commercial purposes of Assignor. Assignor agrees not a assign, transfer, or grant a security interest in any of its Accounts Receivable to any other party during the term of this Agreement. Assignor shall not create, permit, or suffer to exist any lien, claim, or right in, to or on the Accounts Receivable other than the interest of Assignee as provided in this Agreement; and Assignor shall take such actions as are necessary to remove, and will defend the right, title, and interest of Assignee in and to the Accounts Receivable against any claims or demands of all persons whomsoever, other than those created by this Agreement. Assignee agrees to refrain from and not to take in any manner whatsoever any action or omission, which in either case may interfere with or hinder the collection of the Accounts Receivable or interfere with any of Assignee's rights under this Agreement.

**11.   Indemnification.** Assignor shall unconditionally indemnify, defend and hold Assignee, its employees, officers, directors and agents (and any further assignee, beneficiary and/or acquirer) free and harmless from and against any and all loss, liability, damage, judgment, claim, deficiency, or expense (including interest, penalties, attorneys' fees and amounts paid in settlement) to which Assignee or any assignee thereof may become subject in connection with any loss, liability, damage, judgment, claim, deficiency, or expense arising from or based upon a breach by Assignor of its representations, warranties and covenants contained herein, any underlying contract or in any other agreement, or any information certified in any schedule or certificate delivered by Assignor being inaccurate, untrue or misleading in any respect at any time, even at a later time other than which such document or information was furnished, as well as any amount not paid to the Assignee by the Clients per the Accounts Receivable due to returns of sold products due to deficiencies of such products.

**12.   Events of Default.** The term **"Event of Default"** as used in this Agreement shall mean the occurrence of any of the following events:

**(a)**   The failure of either Assignor to punctually and properly observe, keep or perform any duty, covenant, agreement, condition or obligation herein required to be observed, kept or performed; or required under any other agreement or contract that may be executed between one or more Assignor and Assignee.

**(b)**   The breach of any representation, warranty, or covenant contained in this Agreement or such representation, warranty, or covenant is not true, accurate, or correct in any material respect.

**(c)**   The failure of Assignor to pay any obligation or indebtedness owed by Assignor to Assignee whether arising hereunder or under some other agreement or contract between or among the Assignor and Assignee.

7

Doc ID: 56fe04b024f8272606208a73cbe8272b2c34945a

mundi

**(d)** Any of (a) the appointment of a receiver or trustee for either Assignor, or (b) either Assignor becomes insolvent, is unable to pay its debts as they mature or makes a general assignment for the benefit of creditors, or (c) either Assignor is adjudicated a debtor in bankruptcy or (d) either Assignor requests, either by way of petition or answer, that such Assignor be adjudicated a bankrupt or that such Assignor be allowed or granted any reassignment, extension, reorganization or other relief under any bankruptcy law or any other law for the relief of debtors now or hereafter existing, (e) an involuntary petition in bankruptcy is filed by or against either Assignor and has not thereafter been dismissed, or (f) an involuntary petition in bankruptcy is filed by or against any guarantor which is not dismissed or stayed within forty-five (45) days of the filing thereof.

**(e)** A levy or notice of attachment, execution, tax lien or assessment or similar process is issued against any of the Collateral, *provided, however*, that in the event no lien or security interest attaches to the Collateral, no Event of Default shall occur provided there is adequate insurance coverage or the same is being contested in good faith and for which adequate reserves have been taken with respect thereto on the books and records of the applicable Assignor.

**(f)** Any judgment is filed or entered against either Assignor in an amount exceeding Fifty Thousand Dollars ($50,000.00) which is not bonded or paid in full within sixty (60) days.

**(g)** The dissolution of either Assignor.

**(h)** This Agreement shall for any reason (other than pursuant to the terms thereof) cease to create a valid security interest in any material portion of the Collateral purported to be covered thereby or such security interest shall for any reason (other than the failure of Assignee to take any action within its control) cease to be a perfected (to the extent such perfection is required by the terms hereof) and first priority security interest.

**(i)** a material adverse change occurs in Assignor's financial condition, business or operations; or a change in the control, management or ownership of Assignor or the sale of substantially all of Assignor's assets without Assignee's written consent.

**(j)** Assignee deems itself insecure and has reasonable cause to believe that the prospect of Assignor's performance under this Agreement appears jeopardized or if Assignee deems itself insecure and has reasonable cause to believe that the prospect of any guarantor's performance appears jeopardized regardless of Assignor's performance.

**13.** <u>Remedies</u>. Upon the occurrence of a Default Event at the sole discretion of Assignee:

**(a)** all Obligations owed to Assignee shall be immediately due and payable without demand by Assignee;

**(b)** Assignee shall have the right to charge the Default Fees in addition to any other Fees due to Assignee hereunder;

**(c)** Assignee shall have the right, at its discretion, to cease further Advances and/or to terminate this Agreement, all of which may be done without notice to Assignor and Assignee may immediately exercise all rights and remedies under this Agreement, the UCC and applicable law;

**(d)** Assignee shall enforce all lien rights of Assignor and to take any and all actions necessary or desirable to enforce such security interest or lien rights in the name of Assignee; and/or

Doc ID: 56fe04b02498272606208a73cbe8272b2c334945



(e) Assignee shall be authorized to notify each bank or other financial institution in which Assignor maintains a banking or depository account; and Assignor hereby irrevocably authorizes such financial institution that the funds necessary to cure Assignor's breach as set forth in writing by Assignee to such financial institution shall be set aside and held in trust for the exclusive benefit of Assignee;

**14. Execution in Counterparts.** This Agreement may be executed by the parties hereto in any number of counterparts, and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute but one and the same agreement and may be exchanged by facsimile or by electronic transmission of an portable document format file or equivalent (also known as a "PDF file"), which shall be effective as delivery of a manually executed original counterpart of this Agreement.

**15. Severability.** If any provision of this Agreement is held to be illegal, invalid, or unenforceable, such provision shall be fully severable, and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected thereby.

**16. Amendments.** No modification, waiver or amendment of this Agreement shall be valid unless the same is in writing and signed by the party against whom the enforcement of such modification, waiver or amendment is sought.

**17. Governing Law and Jurisdiction.**

(a) The Agreement shall be governed and construed by the laws of the State of New York, without regard to the conflicts of law principles thereof.

(b) Assignor and Assignee expressly and irrevocably agree and submit themselves to the exclusive jurisdiction of the state or federal courts seating the State of New York, United States of America, and waive any other jurisdiction that might be applicable to them by virtue of their present or future domiciles or residences or due to any other reason.

**18. Jury Waiver.** IN THE EVENT OF A LAWSUIT OR COURT PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ENFORCEMENT HEREOF EACH ASSIGNOR AND ASSIGNEE HEREBY IRREVOCABLY WAIVE ANY RIGHT ANY SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY AT ANY TIME ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED HEREBY OR ASSOCIATED HEREWITH.

**19. Taxes.** Within the term provided by the applicable law and once Accounts Receivable have been transferred from Assignor to Assignee, solely Assignor shall be responsible to remit any withholding tax to the applicable tax authorities pursuant to the applicable. Any such withholdings, payments or deductions for taxes shall be solely borne by Assignor.

Assignor shall furnish Assignee with a copy of the tax filings showing the payment of the tax attributable to Assignee and paid by Assignor in terms of the preceding paragraph, as well as the certificates issued by Assignor to Assignee in connection with the taxes so withheld, within 20 (twenty) days after the end of each calendar month.

20. <u>Right of First Refusal</u>. During the term of this Agreement, Assignor may not sell, assign or transfer any Account Receivable without consent of Assignee. Assignor shall first provide Assignee with the opportunity of purchasing any of Assignor's Accounts Receivable, which Assignor desires to sell, assign and transfer. Assignee shall have 10 (ten) days after receipt of notice from Assignor within which to notify Assignor of Assignee's intent to exercise its option to purchase any such Accounts. If Assignee agrees to purchase such Accounts, Assignee shall deliver to Assignor the notification form as set forth on **Exhibit "E"** hereto.

21. <u>Assignment</u>. This Agreement shall be binding on, and shall inure to the benefit of, the parties hereto and their respective successors and permitted assigns. Assignee and any successor or assign thereof may at any time assign or transfer any of its rights or obligations hereunder without notice to or the consent of the Assignor. Assignor may not assign or transfer any of its rights or obligations hereunder without the prior written consent of the Assignee. Any purported assignment in violation of the foregoing shall be null and void.

22. <u>Non-Waiver</u>. No failure or delay on Assignee's part in exercising any right, power or remedy granted to Assignee hereunder will constitute or operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right set forth herein.

23. <u>Attorney Fees</u>. Assignor agrees to pay and reimburse Assignee for all reasonable attorney's fees, court costs and other expenses incurred by Assignee arising under or related to the interpretation or enforcement of this Agreement, including, but not limited to, protecting or enforcing Assignee's interest in the Accounts Receivable purchased, the Collateral securing Assignor's obligations or in connection with any insolvency event of Assignor or an account debtor related to the Accounts Receivable. Notwithstanding the existence of any law, statute or rule, in any jurisdiction that may provide Assignor with a right to attorney's fees or costs, Assignor hereby waives any and all rights to hereafter seek attorney's fees or costs thereunder against Assignee and Assignor further agrees that Assignee exclusively shall be entitled to indemnification and recovery of any and all attorney's fees or costs in respect to any litigation based hereon, arising out of, or related hereto, or in connection with, this Agreement and/or any other agreement executed in conjunction herewith, or any course of conduct, course of dealing, oral or written statements or actions of either party hereto.

<u>Notice</u>. Any notice or other communication by either party to the other in connection with an Event of Default, breach of the Agreement, termination of the Agreement or any written notice as provided for herein shall be in writing and shall be sent by by (i) registered or certified US Mail; or (ii) a nationally recognized overnight delivery service, in each case properly addressed, with postage or fee prepaid and it shall be deemed to have been given when delivered to or refused by the addressee; or (iii) E- mail correspondence. If to Mundi, refer to 19 West 24th Street, 10th Floor, New York, NY, 11201, United States or via e-mail at sebastian@mundi.io . If to ADN JEANS GROUP LLC refer to 13014 N. Dale Mabry Hwy. Suite 617, Tampa, FL, 33618, USA or via e-mail at joseluisa@riosul.com.mx.



24. <u>Entire Agreement</u>. The Agreement contains the entire understanding of the parties hereto and relating to the subject matter hereof and is the final and complete expression of their intent. No prior or contemporaneous negotiations, promises, agreements, covenants, or representations of

mundi

any kind or nature, whether made orally or in writing, have been made by the parties, or any of them, in negotiations leading to this Agreement or relating to the subject matter hereof, which are not expressly contained herein, or which have not become merged and finally integrated into this Agreement; it being the intention of the Parties hereto that in the event of any subsequent litigation, controversy, or dispute concerning the terms and provisions of this Agreement, no party shall be permitted to offer or introduce oral or extrinsic evidence concerning the terms and conditions hereof that are not included or referred to herein and not reflected in writing. No conditions exist to the legal effectiveness of this Purchase Agreement unless expressly set forth herein

25. Term. The term of this Agreement shall be for 1 (one) year, commencing on June 1, 2021, with automatic annual renewal renew for a term equal in time thereafter, unless written notice is delivered by Assignor to Assignee not more than sixty (60) days or less than thirty (30) days prior to the renewal date of Assignor's intent to not renew. Assignee shall have the right to terminate this Agreement (i) at any time by giving sixty (60) days prior written notice, and (ii) at any time without notice upon the occurrence and during the continuance of an Event of Default. Upon the effective date of termination, all of Assignor's obligations, whether incurred under this Agreement or any other agreement, amendment or supplement thereto or otherwise, shall become immediately due and payable to Assignee without notice or demand. Notwithstanding any termination, until all of Assignor's obligations (other than contingent indemnification obligations not then asserted) of every nature whatsoever shall have been fully paid and satisfied, Assignee shall retain Assignee's security interest in and title to all existing and future Accounts Receivable and other Collateral held by Assignee hereunder. Until final termination following the notice thereof, Assignor shall continue to offer all Accounts Receivable to Assignee and Assignee shall be under no obligation to make any further advances or purchase any Account Receivable with respect thereto, except in its sole and exclusive discretion.

Any termination of this Agreement shall not serve to release any obligation of Assignor or security interest granted herein until all Accounts Receivable purchased hereunder and all indebtedness and obligations of Assignor to Assignee have been paid in full or repurchased by Assignor. Assignor understands and agrees that this provision constitutes a waiver of its rights under § 9-513 of the UCC.

IN WITNESS WHEREOF, the parties hereby execute this Agreement on the date mentioned in the preamble hereof.

ASSIGNOR
ADN JEANS GROUP LLC

*[signature]*

Name: Justo Olvera Caballero
Position: Legal representative
Date: June 1, 2021

ASSIGNEE
MUNDI TRADE, INC.

*M Pustilnick*

Name: Martin Pustilnick
Position: Legal representative
Date: June 1, 2021

11

Doc ID: [illegible]



## EXHIBIT "A"

### List of Clients

Each Payor listed below is authorized up to its corresponding amount listed in the adjacent column.

| Payors | Payor Line Size |
|---|---|
| SUPREME INTERNATIONAL LLC | $150,000 (one hundred fifty thousand Dollars 00/100 currency of the United States of America) |
| VF OUTDOOR LLC (WILLIAMSON DICKIE A DIVISION OF VF OUTDOOR) | $2,000,000 (two million Dollars 00/100 currency of the United States of America) |
| VF IMAGEWEAR INC | $600,000 (six hundred thousand Dollars 00/100 currency of the United States of America) |
| BASS PRO LLC | $1,000,000 (one million Dollars 00/100 currency of the United States of America) |

[remainder of page intentionally left blank]



12

Doc ID: 56fe04b024f8272606208a73cbe8272b2c344a45a

...



## EXHIBIT "B"

### List of Accounts Receivable

All invoices issued by ADN JEANS GROUP LLC by the Clients listed in Exhibit "A" as long as such are due 60 days upon invoice date and Mundi Trade, Inc. discretionally approve their purchase.

[Remainder of page intentionally left blank]



13

Doc ID: [illegible identifier]



**EXHIBIT "C"**

Price Determination

| | | |
|---|---|---|
| Initial Advance | - | An amount to be determined, but in any case up to 90.0% of the Accounts Receivable face value. |
| Net Amount | - | US$3,750,000 (three million seven hundred fifty thousand dollars 00/100 currency of the United States of America) |
| Balance Payment | - | 2 business days upon reception of funds from Client |
| Factoring Commission | - | 0.85% per month of the disposed amount, calculated on a daily basis over 30 days, compounded on a monthly basis. |
| Other Charges | - | In case of delay by the debtor in completing the payment on the stipulated payment date: 0.85% per month of the disposed amount, calculated on a daily basis over 30 days compounded on a monthly basis. |
| Maximum Factoring Amount | - | US$3,750,000 (three million seven hundred fifty thousand Dollars 00/100 currency of the United States of America) |

[Remainder of page intentionally left blank]



14

Doc ID: 94179e8171c754a8



# EXHIBIT "E"

## Model of Notice of Exercise of Right of First Refusal

June 1, 2021
ADN JEANS GROUP LLC
13014 N. Dale Mabry Hwy. Suite 617, Tampa, FL, 33618, USA

Re: **Notice of Exercise of Right of First Refusal**

Dear Sirs:

Reference is made to the Agreement for the Sale and Purchase of Accounts Receivable dated as of June 1, 2021 (the "**Agreement**"), entered into ADN JEANS GROUP LLC ("**Assignor**"), as assignor, and Mundi Trade, Inc. ("**Assignee**"), as assignee.

Pursuant to the Agreement, notice is hereby given to you of our intention to exercise the right of first refusal to purchase the accounts receivable described in the "**Sole**" **Exhibit** herein.

Yours sincerely,

*M Pustilnick*

Mundi Trade, Inc.
By: Martin Pustilnick
Position: Legal representative

Acknowledged and agreed:

**ADN JEANS GROUP LLC**

Name: Justo Olvera Caballero
Position: Legal representative

15

Doc ID: 56fa04b02478272606206a73cbe8272b2c34945a



## "SOLE" EXHIBIT

### Accounts Receivable

Any and all accounts receivables issued to:

| # | Payor Name |
|---|---|
| 1 | SUPREME INTERNATIONAL LLC |
| 2 | VF OUTDOOR LLC (WILLIAMSON DICKIE A DIVISION OF VF OUTDOOR) |
| 3 | VF IMAGEWEAR INC |
| 4 | BASS PRO LLC |

[Remainder of page intentionally left blank]



16
Doc ID: 56fe04b024f8272606208a73cbe8272b2c334945



# Registro de auditoría

| | |
|---|---|
| **TÍTULO** | Factoring - ADN Jeans |
| **NOMBRE DE ARCHIVO** | DOCUMENTACION_MUNDI-3-18_organized.pdf |
| **ID DE DOCUMENTO** | fd4fe04de249877a6b62c6af6c0e867bbad334e5 |
| **FORMATO FECHA REGISTRO AUDITORÍA** | MM / DD / YYYY |
| **ESTADO** | • Completado |

## Historial del documento

**ENVIADO**  06 / 07 / 2021  15:35:30 UTC-4  Enviado para su firma a Martín Pustilnick (martin@mundi.io) por sebastian@mundi.io  IP: 177.226.238.146

**VISUALIZADO**  06 / 07 / 2021  15:42:07 UTC-4  Visualizado por Martín Pustilnick (martin@mundi.io)  IP: 67.86.131.106

**FIRMADO**  06 / 07 / 2021  15:42:19 UTC-4  Firmado por Martín Pustilnick (martin@mundi.io)  IP: 67.86.131.106

**COMPLETADO**  06 / 07 / 2021  15:42:19 UTC-4  El documento se ha completado.



| | |
|---|---|
| Title | ADN Jeans - Mundi Trade Inc. - 23-cv-02862 - Mundi Trade -...... |
| File name | ADN%20Jeans%20-%2...Motion%20to%2.pdf |
| Document ID | 56ea11b0ac782d2100303a73cb1c2d2b2c3494fa |
| Audit trail date format | MM / DD / YYYY |
| Status | • Signed |

This document was requested from app.clio.com

## Document History

**SENT** — **08 / 18 / 2023** 00:11:04 UTC — Sent for signature to Sebastian Kontarovsky (sebastian@mundi.io) from christian@jensenfirm.com
IP: 76.116.55.198

**VIEWED** — **08 / 18 / 2023** 15:00:07 UTC — Viewed by Sebastian Kontarovsky (sebastian@mundi.io)
IP: 172.58.109.28

**SIGNED** — **08 / 18 / 2023** 15:02:34 UTC — Signed by Sebastian Kontarovsky (sebastian@mundi.io)
IP: 172.58.109.28

**COMPLETED** — **08 / 18 / 2023** 15:02:34 UTC — The document has been completed.

Powered by Dropbox Sign